Minnie YEARBY et al.

v.

T. M. "Jim" PARHAM, in his official capacity as Commissioner of the Georgia Department of Human Resources, et al.

No. C75–2532A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 1, 1976.

Myron N. Kramer and David A. Webster, Atlanta Legal Aid, Richard K. Greenstein and Dennis A. Goldstein, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., N. D. Ga., Julian M. Longley, Jr., Asst. U. S. Atty., N. D. Ga., Stephen L. Cotter, Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

This is a class action commenced under 42 U.S.C. § 1983 for redress of federal rights involving the application of section 402(a)(23) of the Social Security Act of 1935, as amended, 42 U.S.C. § 602(a)(23), to the Aid to Families with Dependent Children [AFDC] program in Georgia. Plaintiffs seek injunctive and declaratory relief.

The case is presently before the Court on plaintiffs' motion for class certification, plaintiffs' motion for preliminary and permanent injunction, and defendant Mathews' [federal defendant] motion to dismiss.

## I.

The proposed class is composed of two groups. The first group is all AFDC recipients who are part of a one-or two-person AFDC household and whose aid group is currently either receiving a maximum AFDC grant or an AFDC grant which is greater than the proposed reduced maximum grants imposed by the state defendant effective January 1, 1976. The second group is composed of all AFDC recipients who are part of a four-or five-person AFDC household presently receiving maximum grants of $148 and $169, respectively, which grants were reduced as a result of reductions implemented by the state defendant in May and November, 1975. The Court finds that the proposed class meets the requirements of Fed.R.Civ.P. 23(a) and 23(b)(2) and, accordingly, GRANTS plaintiffs' motion for class certification.

## II.

The federal defendant challenges the Court's jurisdiction in the instant action by attacking each jurisdictional allegation in plaintiffs' Complaint and alleging that joinder of defendant Mathews was improper. See Order dated February 12, 1976. The Court finds that the joinder of defendant Mathews was proper for the reasons set forth in the Order of February 12. In making a determination regarding its jurisdiction, the Court is not bound by the plaintiffs' allegations, particularly inasmuch as defendant Mathews was not an original party defendant in this action, but rather, was subsequently joined by motion of the state defendant. The Court finds that its jurisdiction over defendant Mathews is supported by 28 U.S.C. § 1361 and 5 U.S.C. §§ 702, 704. See Ortego v. Weinberger, 516 F.2d 1005 (5th Cir. 1975) for a discussion of jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Accord-ingly, defendant Mathews' motion to dismiss on jurisdictional grounds is hereby ORDERED DENIED.

## III.

Title IV–A of the Social Security Act, 42 U.S.C. § 601 et seq. [the Act], creates a comprehensive scheme for public assistance to families with dependent children with federal cost sharing. States are not required to participate in the AFDC program, but if they choose to do so, they must comply with the provisions of the Act. However, the States have traditionally been at liberty to pay as little or as much as they choose. See King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The availability of federal funds is conditioned upon the existence of a state plan for AFDC, created by state law, which meets the detailed federal requirements established by the Act and by the implementing federal regulations.

There are two basic factors that enter into the determination of what AFDC benefits will be paid. See Rosado v. Wyman, 397 U.S. 397, 408, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969). First, it is necessary to establish a "standard of need" for each grant group for determining who is eligible for public assistance. Second, the state must determine what "level of benefits" will be paid. On both scores the states are left with wide discretion. Some states include in their standard of need items that others do not take into account. Regarding the level of benefits paid some states impose dollar maximums on the amount of AFDC benefits payable to any one individual or family. Such maximum grants serve as an upper limit irrespective of how far short the maximum grant may fall of the standard of need. Other states limit the level of benefits by a system of "ratable reductions" whereby all AFDC recipients receive a fixed percentage of the standard of need.

The Georgia AFDC program presently pays sixty-five percent (65%) of a family's "need" up to certain dollar maximums

which, where applicable, limit payments to less than 65% of need. Thus, the State pays either 65% of need or the administrative maximum, whichever is less. Plaintiffs attack the "maximums" for their respective family sizes. Effective January 1, 1976, the State established the following maximums:

| Grant Group | Administrative Maximum |
|---|---|
| 1 person | $ 38.00 (subsequently changed |
| 2 person | $ 77.00       to $42.00) |
| 3 person | $115.00 |
| 4 person | $148.00 |
| 5 person | $169.00 |
| 6 person | $184.00 |
| 7 or more person | $199.00 |

In 1967 the Act was amended to require participating states to update their standards of need and maximum grants to reflect increases in the cost of living since the last time these figures were computed. Section 402(a)(23) states as follows:

"A State plan for aid and services to needy families with children must . . (23) provide that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted . . . ."

Prior to July 1, 1969, Georgia had last increased maximum grants on July 1, 1967. In July 1969, Georgia made its initial attempt to comply with section 402(a)(23) by adjusting the pre-1969 maximums in accordance with the percentage increase in the "standard of need," which was 4.73%. However, six months later the Department of Health, Education, and Welfare [HEW] informed the State that pre-1969 maximums should have been adjusted by the percentage increase in the Consumer Price Index for Atlanta for "All Items" for June 1967 to June 1969—a 9.85% increase. Thereafter, the maximum grants as already adjusted by 4.73%, were increased by Georgia by another 9.85% effective June 1971.

The resulting figures represented Georgia's compliance with section 402(a)(23). Pursuant to these changes, specified maximum grants were set out for families of various sizes. Specifically, maximum grants for families of one, two, four and five were set at $44, $79, $149 and $184, respectively. As required, these benefit levels were approved by HEW as in compliance with section 402(a)(23). Respecting any future reductions in AFDC grants, the levels established pursuant to section 402(a)(23) are to be considered as "floors" below which the grants cannot be reduced.

The parties do not dispute that the maximum grants under attack in the instant action fall below the levels established by Georgia in June 1971 pursuant to section 402(a)(23). However, both plaintiffs and the state defendant argue that the methodology used to compute the June 1971 maximum grant adjustments was improper. State defendant asserts that the maximum grants were over-adjusted in 1971 while plaintiffs contend that the maximum grants were under-adjusted.

Up until November 1975, the maximum grants in Georgia were steadily increased and thus the section 402(a)(23) adjusted maximums were never relevant. However, beginning in November 1975, Georgia began reducing the maximum grants and, inasmuch as the 1971 adjusted maximums are to serve as "floors" they became important.

The state defendant contends that the maximum grants should have been adjusted, as required by section 402(a)(23), by taking the pre-July 1, 1969 maximum grants and increasing such in accordance with the cost of living increase mandated by HEW, i. e., 9.85%. Thus, the proper section 402(a)(23) adjusted maximum grants should have been as follows:

| Grant Group | Pre-July 1, 1969 Maximums, established July 1, 1967 | Maximum plus 9.85% cost of living increase (rounded) |
|---|---|---|
| 1 person | $ 38.00 | $ 42.00 |
| 2 person | $ 67.00 | $ 74.00 |
| 3 person | $ 96.00 | $106.00 |
| 4 person | $125.00 | $138.00 |
| 5 or more person | $154.00 | $170.00 |

The current maximum grants presently under attack compare favorably to those adjusted maximums for July 1, 1969, as alleged by the state defendant.

Plaintiff contends, however, that yet another methodology should be used to compute the section 402(a)(23) adjusted maximum grants. According to plaintiffs' theory, the intent of section 402(a)(23) is that the maximum grants be adjusted by the same percentage that the standard of need is adjusted. The parties are in agreement that the standard of need is adjusted by taking each component of need, calculating the percentage increase in cost of living since the date it was established, converting the percentage to a dollar amount and totaling the dollar amounts so obtained to attain a total adjustment to be added to the existing standard of need. Plaintiffs contend that the maximum grants should then be adjusted by converting the total dollar adjustment in the standard of need to a percentage of the old standard and apply that percentage to the maximum grant as last established. By this methodology the maximum grants are increased by the same percentage as the total increase in the standard of need.

The plaintiffs' formula results in higher adjusted maximum grants for July 1, 1969. Prior to the enactment of section 402(a)(23), Georgia last updated its maximums in 1967. Although the cost of living index, all items, for Atlanta, Georgia, reflected a rise in the cost of living of 9.85% from 1967 to 1969, the percentage cost of living increase for the updated standard of need was approximately 16%, with some variations depending on family size. Accordingly, the maximum grants as adjusted by plaintiffs are as follows:

| Grant Group | Adjusted Maximum Grants, July 1, 1969 |
|---|---|
| 1 person | $45.00 |
| 2 person | $78.00 |
| 4 person | $146.00 |
| 5 person | $180.00 |

### IV.

The proper methodology to be used in adjusting maximum grants pursuant to section 402(a)(23) must be determined from the statutory language. The Supreme Court in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969), although directly concerned with the computation of the standard of need, spoke of the evolution and impact of section 402(a)(23):

"The background of § 402(a)(23) reveals little except that we have before us a child born of the silent union of legislative compromise. Thus, Congress, as it frequently does, has voiced its wishes in muted strains and left it to the courts to discern the theme in the cacophony of political understanding. Our chief resources in this undertaking are the words of the statute and those common-sense assumptions that must be made in determining direction without a compass.

"Reverting to the language of § 402(a)(23) we find two separate mandates: first, the States must re-evaluate the component factors that compose their need equation; and, second, any 'maximums' must be adjusted.

"We think two broad purposes may be ascribed to § 402(a)(23): First, to require States to face up realistically to the magnitude of the public assistance requirement and lay bare the extent to which their programs fall short of fulfilling actual need; second, to prod the States to apportion their payments on a more equitable basis. Consistent with this interpretation of § 402(a)(23), a State may, after recomputing its standard of need, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system, but it may not obscure the *actual* standard of need.

"The congressional purpose we discern does not render § 402(a)(23) a meaningless exercise in 'bookkeeping.' Congress sometimes legislates by innuendo, making declarations of policy and indicating a preference while requiring measures that though falling short of legislating its

goals, serve as a nudge in the preferred directions. In § 402(a)(23) Congress has spoken in favor of increases in AFDC payments. While Congress rejected the mandatory adjustment provision in the administration bill, it embodied in legislation the cost-of-living exercise which has both practical and political consequences.

"It has the effect of requiring the States to recognize and accept the responsibility for those additional individuals whose income falls short of the standard of need as computed in light of economic realities and to place them among those eligible for the care and training provisions. Secondly, while it leaves the States free to effect downward adjustments in the level of benefits paid, it accomplishes within that framework the goal, however modest, of forcing a State to accept the political consequence of such a cutback and bringing to light the true extent to which actual assistance falls short of the minimum acceptable. Lastly, by imposing on those States that desire to maintain 'maximums' the requirement of an appropriate adjustment, Congress has introduced an incentive to abandon a flat 'maximum' system, thereby encouraging those States desirous of containing their welfare budget to shift to a percentage system that will more equitably apportion those funds in fact allocated for welfare and also more accurately reflect the real measure of public assistance being given."

397 U.S. at 412–14, 90 S.Ct. at 1218.

Section 402(a)(23) states that by July 1, 1969, the standard of need must be adjusted to reflect changes in the cost of living and that "any maximums that the State imposes on the amount of aid paid to families . . . [must be] proportionately adjusted." The regulations implementing section 402(a)(23) state that "if a State maintains a system of dollar maximums, these maxi-

mums must be proportionately adjusted in relation to the updated standards." 45 C.F.R. § 222.20(a)(2)(ii).

The federal defendant argues that the word "proportional" as used in both the Act and regulations should not be construed in its mathematical sense, that is, having the same or a constant ratio or relation, but rather, should be construed as meaning "correspondingly" or "accordingly."[1]

The state defendant contends that the two parts of section 402(a)(23)—one part regarding standard of need and one part regarding maximum grants—are not to be read together inasmuch as they were enacted for different purposes. The state defendant asserts that Congress required the adjustment in the standard of need to expose state shortcomings in meeting welfare needs. The maximum grant adjustment, however, was designed to give individual welfare recipients a cost of living increase, should states elect to retain the maximum grant system. The state defendant argues that by intermingling these adjustments, as urged by plaintiffs, it is possible to construe a hypothetical situation which would produce absurd results, such as an adjusted maximum grant twice as great as the adjusted standard of need.

Admittedly, it is conceivable that a set of extreme conditions may arise which, under the plaintiffs' methodology, would produce illogical results. Nevertheless, the Court favors the plaintiffs' interpretation of the statute.

The two clauses of section 402(a)(23), governing standard of need and maximum grants, must be read together. As the Supreme Court stated in *Rosado v. Wyman, supra,* at 412, 90 S.Ct. at 1218, section 402(a)(23) is "a child born of the silent union of legislative compromise. . . . Our chief resources in this undertaking are the words of the statute and those common-

---

1. Both definitions appear in the standard dictionaries. See Random House Dictionary of the English Language 1153 (Unabridged Edition 1967); Webster's New International Dictionary 1985 (Unabridged Edition 1960).

sense assumptions that must be made in determining direction without a compass." Certainly the state defendant is correct in its assertion that Congress enacted section 402(a)(23) to expose the state's shortcomings in welfare needs. Congress accomplished this by requiring the states to update the standard of need. Those states using the percent of need formula to compute benefits were thus forced to pay higher benefits per recipient or· reduce the percent of need provided as benefits. The states under the maximum grant formula, and there are only a handful of such states of which Georgia is one, were still able to hide behind the maximum grant without formally disclosing the exact percentage of need paid as benefits. Thus Congress required such states to increase the maximum grants "proportionately" to the increase in the standard of need. Such a requirement would have the additional effect of discouraging the states from using the maximum grant formula.

In addition to "exposing" the states and requiring the states to face their welfare needs realistically, Congress also intended section 402(a)(23) to increase benefits per recipient. See *Rosado v. Wyman, supra,* at 413, 90 S.Ct. at 1207. Those are the three purposes of section 402(a)(23) and the section must be read as a whole with these purposes in mind.

■ The definition of the word "proportionate" urged by the federal defendant must be rejected. Congress is not made of mathematicians, yet section 402(a)(23) is a mathematically technical provision involving a variety of mathematical computations. In such a setting, the Court must assume that Congress intended "proportionate" to be construed in the mathematical sense. If it had intended otherwise, words such as "accordingly" or "correspondingly" would have been used. Furthermore, the implementing regulations promulgated by the Secretary of Health, Education and Welfare state that the maximums must be "proportionately adjusted." 45 C.F.R. § 233.20(a)(2)(ii).

The statute and implementing regulation are clear on their face. Section 402(a)(23) requires that maximum grants be adjusted by a ratio equal to that by which the standard of need is increased. It is in accordance with this methodology, urged upon the Court by plaintiffs, that the July 1, 1969, adjusted maximum grants must be computed. The Court notes that plaintiffs and defendants differ somewhat on the indices used to compute the update in the various components of the standard of need pursuant ·to section 402(a)(23). The Court emphasizes that this order does not adopt the figures utilized by plaintiffs but only the methodology to be used in computing adjusted maximum grants. The computation of the adjusted standard of need is not an issue in this lawsuit.

## V.

■ The state defendant raises an additional argument regarding the maximum grant to five-person households. As discussed above, Georgia pays the lesser of 65% of "need" or an administrative maximum. "Need" in Georgia for a family of five is $259.55. Reducing such to 65% produces $168.71. Thus, the state defendant argues, Georgia may not pay a five-person household more than $169 despite the fact that the section 402(a)(23) adjusted maximum grant may be higher. Yet such an argument flies in the face of both the wording and the intent of section 402(a)(23) and implementing regulations. If a system of dollar maximums is maintained by a state, and Georgia does maintain such a system, then those maximums must be adjusted according to section 402(a)(23) and the adjusted maximums become the "floor," below which the benefits cannot be subsequently reduced. As recognized by the Supreme Court in *Rosado v. Wyman, supra,* a state may, after raising its standard of need to take account of cost of living changes, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching from a maximum grant to a percent reduction system, but it may not obscure the actual standard of need. Section 402(a)(23) makes clear that if a state

chooses to reduce the level of benefits, the method employed must be related to the standard of need; otherwise the standard of need is obscured. See *Alvarado v. Schmidt,* 317 F.Supp. 1027 (W.D.Wis.1970). This goal, the Court continued, was accomplished by requiring states using the percentage system and desirous of effecting a downward adjustment in benefits paid to do so by reducing the percent figure, and by requiring those states using maximum grants to increase such grants proportionately to the standard of need. Georgia's policy of paying the lesser of 65% of need and the maximum grant obscures the standard of need and defeats the intended effects of section 402(a)(23). By employing such a method Georgia would be able to avoid the political consequences of reducing the percent of need paid as benefits or, in the alternative, would be able to pay benefits at a level lower than that established by the section 402(a)(23) maximum grant adjustments. Moreover, such a method avoids the intended effect of providing states with an incentive to abandon a system of maximum grants and to adopt a ratable reduction system. Accordingly, the level of benefits established in Georgia must be in accordance with the maximum grants as adjusted pursuant to section 402(a)(23). The state defendant's argument regarding the level of benefits established for a five-person household is, therefore, without merit.

### VI.

The Court recognizes that this decision raises the possibility of extensive fiscal and policy adjustments for the State, including a massive strain on the state welfare budget. The Court is desirous of providing the State with a reasonable amount of time to conform its program to statutory requirements.

Accordingly, the Court hereby GRANTS plaintiffs' motion for preliminary and permanent injunction, to take effect upon expiration of the current fiscal quarter.

By order dated February 27, 1976, the state defendants have been depositing $100,000 per month with the Clerk of Court, such amount representing an estimate of the amount of AFDC benefits in dispute. This procedure was designed to protect the plaintiffs from the consequences of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), barring retroactive recovery of monetary benefits from the United States under the Eleventh Amendment, should the plaintiffs prevail on the merits. The procedure was adopted as a result of the delay in the resolution of the case caused by the joinder of defendant Mathews. The state defendant is DIRECTED to continue depositing $100,000 per month with the Clerk of Court until such time as the injunction becomes effective. Furthermore, the state defendant is DIRECTED to compute the additional benefits owed for past months and pay such benefits from the most recent month to as far back as the funds on deposit with the Clerk of Court will allow, but no further back than February 1976. The Clerk of Court is DIRECTED to disburse any excess funds on deposit to the state defendant. In addition, defendant Mathews' motion to dismiss for failure to state a claim upon which relief may be granted is hereby ORDERED DENIED.