558 P.2d 84

Trudy HAGGARD, Plaintiff-Respondent,

v.

**IDAHO DEPARTMENT OF HEALTH AND WELFARE, Defendant-Appellant.**

No. 12220.

Supreme Court of Idaho.

Jan. 3, 1977.

Wayne L. Kidwell, Atty. Gen., James Wickham, Asst. Atty. Gen., Boise, for defendant-appellant.

J. Brent Marchbanks, Idaho Legal Aid Service, Pocatello, for appellee.

McFADDEN, Chief Justice.

This case arises out of an appeal from a termination by the Idaho Department of Health and Welfare of a housing allowance provided to plaintiff-respondent Trudy Haggard under the Aid to Dependent Children program.[1] Prior to this action by the department, the respondent, mother of two children (ages 12 and 2), was receiving a total of $263 per month under the ADC program, which sum included an ADC housing allowance of $76 per month. At all times pertinent hereto she was renting a home owned by her parents at a rental of $100 per month. This amount is generally agreed to be less than the fair rental value of the home. Upon learning that the home was owned by the respondent's parents, the department terminated the housing allowance in accordance with sections 3120.23 and 3120.24 of the department's Manual of Operating Policies and Procedures (hereinafter referred to as "manual"). These sections, adopted pursuant to I.C. §§ 56–209[2] and 56–210,[3] read as follows:

1. The terms "Aid to Families with Dependent Children" and "Aid to Dependent Children," and their respective abbreviations, AFDC and ADC, are used interchangeably in the statutes, regulations and cases. This is apparently due to the 1962 Amendment of the Social Security Act which changes the terminology from "Aid to Families with Dependent Children" to "Aid to Dependent Children."

2. "Aid to dependent children.—Aid to dependent children shall be awarded on behalf of needy children who are residents of the state. Such aid shall be awarded in accordance with departmental regulations." I.C. § 56–209.

3. "Amount of assistance.—The amount of assistance which any recipient shall be eligible to receive shall be determined, in accordance with the rules and regulations of the state department, with due regard to his requirements, and the conditions existing in his case, and to the income and resources available to him from whatever source, and which shall be sufficient, when added to the income and resources determined to be available to him, to provide him with a reasonable subsistence compatible with health and his well being: provided that the department may disregard income to the extent and in the manner permitted or required by the public assistance titles of the Social Security Act

*"3120.23 Individuals Living with Relatives*

An allowance for housing may be made to an individual living in the home of his father, mother, son or daughter unless the yearly net income available to the relative and his other dependents is above the maximums referred to in the following schedule:

One Person .......... $2,400
Two Persons ........ 3,000
Three Persons ....... 3,600
Four Persons ....... 4,200
Each Additional Person
Add ............... 500 (8-1-75)"

*"3120.24 Individuals Living in Housing Owned but Not Occupied by Relatives*

A housing allowance will be included in the budget of monthly allowances when the relative is of the degree specified in Manual Section 3120.23 and the relative's net income falls below the maximums referred to in the schedule shown in Manual Section 3120.23. Otherwise a housing allowance will not be made. Individuals living in housing once owned but deeded or transferred to a relative in the degree specified above with a life tenancy reservation, life tenancy or other agreement, are also included in this category. (10-1-73)"

The respondent requested a hearing before the department in an effort to prevent the termination of this $76 housing allowance. At the hearing, respondent did not present any evidence of her parents' "yearly net income." She testified that her parents refused to supply this requested information. The hearing officer determined that respondent had not met her burden of proof of showing that her parents' net income was below the maximum limits set forth in manual § 3120.23 and that she should, therefore, be denied the housing allowance. Respondent appealed the decision to the district court which held that the term "yearly net income" as used in manual § 3120.23 was unconstitutionally vague and reversed the decision of the hearing officer. The Department of Health and Welfare has appealed from that decision.

▮ It must. be noted that the housing allowance was in this case provided under the Aid to Dependent Children program. This program is a joint federal/state matching funds operation which is organized pursuant to Title IV, Part A of the Social Security Act, 42 U.S.C.S. § 601, et seq. Each state is to establish its own regulatory scheme which must not conflict with the federal regulations. *Remillad v. Carleson,* 325 F.Supp. 1272 (N.D.Cal. 1971), aff'd 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Meyers v. Juras,* 327 F.Supp. 759 (D.Ore.1971), aff'd 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971). I. C. § 56–209 et seq. provides for an Aid to Dependent Children program in this state. I.C. §§ 56–202, 209, 211, all contemplate enactment of rules and regulations to facilitate award of aid to dependent children.

▮ The basic purpose of the ADC program is to provide aid to needy children, except where there is a breadwinner in the home who could be expected to provide such aid himself, the paramount goal of the program being the protection of the needy, dependent child. 79 Am.Jur.2d, Welfare Laws, § 6.[4] A "dependent child"

---

as now or hereafter amended or other federal legislation affecting federal financial participation in his assistance."

4. "3240 *Purpose of AFDC*
"Aid to Families with Dependent Children is designed to provide financial support for children in their own homes when such support is not available from private sources. The responsibility for support and care of children customarily devolves upon the par-

ents, but at times its fulfillment may be interrupted by death or illness of one of the parents, or by the abdication of responsibility resulting from disruption of the usual family unit. (6-1-52)
The occurrence of any of these circumstances will undoubtedly result in some disturbance to the stability and security of the child's environment but will by no means automatically result in financial need. If finan-

is defined in 42 USCS § 606(a) to mean a "needy child who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." Funds are disbursed under the program to enable the child to receive sufficient and proper care. It is the *child* who must be dependent, needy and deprived to qualify a family to receive ADC funding.[5]

■ "The only eligibility requirements under aid to families with dependent children program are 'need' and 'dependence' and the 'need' to be considered is that of the children." *Norton v. Lavine,* 74 Misc. 2d 590, 344 N.Y.S.2d 81 (1973). In determining the need of the child, the resources available to meet the need of the child must be calculated.[6] The question thus presented here is whether or not the resources of a grandparent are "available to meet the needs of the (grand)child," in that he has a duty to support the grandchild, such that the ADC grant can be reduced in consideration of the grandparents' financial situation. We hold that he has no such duty, that his resources are not to be considered as available to the grandchild and that the ADC grant cannot therefore be reduced accordingly. This decision is in line with the holding in *Boines v. Lavine,* 44 A.D.2d 765, 354 N.Y.S.2d 252 (App.Div. 1974). *cert. den.* 419 U.S. 1040, 95 S.Ct. 528, 42 L.Ed.2d 317 (1974) (*infra*), where the New York court held that the resources and income of the grandparents were irrelevant in determining the eligibility of their daughter and her child for ADC funding.

Receipt of the ADC funds, even though they are distributed to the parent (or other relative or caretaker) who is caring for the child, and even though in some cases there may be an amount specifically allotted to the caretaker parent, is dependent on the presence of a needy child. Absent such a needy child, the caretaker parent would not be eligible to receive the ADC funds. It is the presence of these needy children, therefore, which necessitates the distribution of public assistance in the form of ADC funding and it is, in turn, the needs of the child which raise the possibility that certain of the child's relatives may have a statutory duty of support.

■ Read together, Manual §§ 3120.23 and 3120.24 specify that an individual who is living in a home owned by his mother, father, son or daughter may not receive a housing allowance if such relative has a yearly net income in excess of the maximums set forth. The policy behind these regulations is that relatives of the specified degree should be required to provide support for their indigent son, daughter, mother or father. These sections enforce that duty by denying a housing allowance if the relative's income is above that fixed by the standards.

cial need, according to the Department's definition, exists in combination with other verifiable eligibility factors, AFDC may be granted to help maintain the child in his home. Financial assistance of itself may not resolve the problem in the best interest of the child but when given should be provided with careful consideration of its purpose and the full participation of the parent or parents in the planning. (6–1–52)

Parent, as used in connection with AFDC, is considered to mean either the natural or adoptive father or mother of the child. (4–15–75)" Dept. of Health and Welfare, Manual of Operating Policies and Procedures.

5. "*3240.3 Eligibility Factors*
The following conditions must be met to qualify for Aid to Dependent Children:

(1) The child must be needy; * * *" (5–1–67) Dept. of Health and Welfare, Manual of Operating Policies and Procedures.

6. "3241 *Need*
The record must show that the child is in need, determined in accordance with the Standards for Determining the Amount and Availability of Resources (Section 3130–3139). If there are resources available to meet the need of the child, assistance cannot be granted even though the other qualifications for Aid to Families with Dependent Children may be met. (6–1–52)" Department of Health and Welfare, Manual of Operating Policies and Procedures.

It is the Department's contention that the statutory authority for it to enforce the duty of support as set forth in Manual §§ 3120.23 and 3120.24 is found in I.C. § 32–1002 as follows:

"Reciprocal duties of support.—It is the duty of the father, the mother and the child or children of any poor person who is unable to maintain himself or herself by work, to maintain such poor person to the extent of his or her ability. Whenever any person shall apply for aid to any county within this state under its indigent laws, and it shall at any time appear to the county commissioners that said poor person has a father, mother, child or children who is able to maintain him or her, but fails so to do, it shall be the duty of the said commissioners to furnish all necessary aid and to bring a civil suit against such father, mother, child or children to recover the amount so expended, in the name of the county. The promise of an adult child to pay for necessaries previously furnished to such parents is binding."

Assuming that an ability to provide housing on a rent-free or less than fair-rental-value basis can be considered an enforceable means of support, and also that a denial of benefits to the recipient (as opposed to seeking reimbursement from the delinquent relative) is an allowable means of enforcement under I.C. § 32–1002, it is clear from the language of this statute and sections 3120.23 and 3120.24 that a grandparent has no duty to support a needy grandchild. While the respondent's parents do have a duty to support her if she qualifies as a "poor" person under I.C. § 32–1002, and there is nothing in the record to show that she does, they have no duty under I.C. § 32–1002 to support the respondent's children—their grandchildren. Such being the case, it is equally as clear that the Department, in the present case, had no authority to terminate the housing allowance being provided for respondent's children as a means of forcing respondent's parents—the children's grandparents,

to provide the home on a cost-free basis. The Haggard childrens' grandparents have no duty to support their grandchildren and the Department cannot consider their financial position in determining the amount of the respondent's ADC grant, which in this case it did in terminating the housing allowance being provided to Trudy Haggard and her children.

The result of this holding is, of course, that Manual §§ 3120.23 and 3120.24 were improperly employed by the hearing officer to terminate the housing allowance. We thus affirm the decision of the district court that the housing allowance should not be terminated, although on grounds different from those relied upon by the lower court. See *Lemmon v. Hardy*, 95 Idaho 778, 519 P.2d 1168 (1974); *Johnson v. Gorton*, 94 Idaho 595, 495 P.2d 1 (1972).

Other courts have dealt with similar fact situations. In the case of *In re Spigner*, 26 Wis.2d 190, 132 N.W.2d 242 (1965), the Wisconsin Supreme Court held that under the Wisconsin support statute the grandparents had no duty to support their grandchild. That statute is very similar to I.C. § 32–1002 as follows:

"The parent, spouse and child of any dependent person (as defined in s. 49.01) who is unable to maintain himself shall maintain such dependent person, so far as able, in a manner approved by the authorities having charge of the dependent, or by the board in charge of the institution where such dependent person is; * * *." Sub. (1) of sec. 52.01, Stats. Wisc.

The Wisconsin court found that where the mother would have been employable and self-sustaining (because the record did not show otherwise) except for the fact that she was required to stay home and care for her infant child, she was not a "dependent person" and, although part of the monthly assistance provided by the welfare department as aid to her child was specifically allotted to her, her child was the "dependent person" who was the beneficiary of the assistance. As such, there

was no liability upon the child's grandfather to reimburse the state for even the amount allotted to his daughter, even though he had a statutory duty to support his daughter and would have been liable to reimburse the state for funds expended directly to her as a needy person. The reasoning of the Wisconsin court is applicable here.

The New York courts have also dealt with the grandparental duty of support. In *Boines v. Lavine,* 44 A.D.2d 765, 354 N.Y.S.2d 252 (1974), *cert. den.* 419 U.S. 1040, 95 S.Ct. 528, 42 L.Ed.2d 317 (1974), the court stated, "absent an obligation of support owing by the grandparents for the needs of a minor child or an unborn infant, their resources and income are irrelevant and should not be the subject of a hearing." The court held that the mother, even though not eligible herself for public assistance, was entitled to receive benefits for her (in this case unborn) child under the Aid to Dependent Children program. The New York courts also followed this reasoning in *Rankin v. Lavine,* 50 A.D.2d 1091, 376 N.Y.S.2d 355 (1975), where they held that where a mother of a (again unborn) child did not herself qualify for public assistance, she was still entitled to receive assistance for her child, notwithstanding the fact that her parents were contributing to her support by allowing her to live with them. In that case, the mother did not qualify for support because she was living in her parents' home and her father's net income exceeded the maximum levels. This fact, however, did not bar the mother from receiving benefits under the ADC program because her *child* was a "needy" child and qualified the family unit for assistance.

This same fact situation was again presented to the New York courts and the same result was reached in *Catoe v. Lavine,* 378 N.Y.S.2d 623 (App.Div.1976).

Again, since the record indicates that this is an ADC grant, the fact that the respondent is living in a house owned by her parents and would not herself be eligible for a housing allowance does not negate the eligibility of her children, and, therefore, her family, for ADC benefits, including an ADC housing allowance, even though this allowance is paid to the respondent as the "caretaker" parent.

The decision of the district court is affirmed. Costs to respondent.

DONALDSON and BISTLINE, JJ., concur.

SHEPARD and BAKES, JJ., concur in the result.