STATE of Wisconsin EX REL. Pamela DOMBROWSKI,
Plaintiff-Respondent-Petitioner,

v.

Mark MOSER, Defendant-Appellant.

Supreme Court

*No. 81–1711. Argued June 1, 1983.—Decided July 1, 1983.*

(Also reported in 334 N.W.2d 878.)

For the petitioner the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief by *James T. Bayorgeon* and *Bayorgeon & Glenn,* Appleton, and oral argument by *James T. Bayorgeon.*

BEILFUSS, C.J.  This is a review of a decision[1] of the court of appeals which reversed the judgment of the trial court, Honorable Nick F. Schaefer, Judge of the Circuit Court for Outagamie County, presiding, adjudicating the defendant to be the father of the plaintiff's child in a paternity action.

The plaintiff, Pamela Dombrowski, commenced a paternity action against the defendant, Mark Moser, on November 30, 1979.  She had previously applied for public assistance from the Outagamie County Department of Social Services (Department).  A file containing the

---

[1] *State ex rel. Dombrowski v. Moser,* 108 Wis. 2d 658, 323 N.W. 2d 182 (1982).

application for aid and other information gathered from Dombrowski is maintained by the Department.

Prior to trial, Moser filed a motion seeking to examine the Department's file for any information that would aid the defendant in his defense. The motion was denied. At trial Moser subpoenaed Dombrowski's caseworker requiring the caseworker to bring the file for inspection. The caseworker was called as a witness but refused to produce the file for inspection.

Outside the presence of the jury Moser renewed his request to inspect the file, claiming that he had reason to believe the file contained exculpatory material which he wished to use to impeach Dombrowski's credibility. The court again denied the request, holding that under sec. 49.53(1), Stats. 1977,[2] the file was confidential and privileged. The jury returned a verdict finding Moser to be the father of Dombrowski's child.

Moser appealed on the sole issue of whether sec. 49.53 (1), Stats., prohibited his inspection of Dombrowski's file. The court of appeals reversed. The court held that sec. 49.53(1) did not prohibit a paternity defendant from inspecting the Department's file, stating:

"The initial question becomes whether the paternity prosecution is a 'purpose . . . connected with the administration' of aid to dependent children within the meaning of sec. 49.53(1). When a mother and her child receive public assistance in the form of aid to dependent children, an action to determine paternity and compel support is commenced to eliminate or reduce assistance. This connection is recognized in sec. 49.19(4)(h) 1a, Stats., which requires the mother, as a condition of eligibility for aid to dependent children, to fully cooperate in efforts directed at establishing the paternity of a child born out of wedlock and obtaining support payments. In addition, the state is automatically assigned the rights to support during the time aid is paid. Sec-

---

[2] All references to the Wisconsin statutes are to the 1977 version unless otherwise indicated.

tion 49.19(4)(h)1b, Stats. We conclude that the action to establish paternity and to compel support is connected to the department's administration of aid to dependent children. To conclude otherwise would be unrealistic. Therefore, sec. 49.53(1) does not bar disclosure of the department's file in this case."

We granted the plaintiff's petition for review.

The sole issue on review is whether sec. 49.53(1), Stats., precludes a defendant in a paternity action from inspecting a county department of social services record, which may contain relevant evidence to impeach the complainant. We hold that, in the appropriate circumstances as outlined below, a paternity defendant's request for inspection of such a record falls within two of the statutory exceptions to the general confidentiality of the records.

This review involves the determination of the scope of the confidentiality placed on State Aid to Families with Dependent Children (AFDC) records. Resolution of this issue involves an examination of federal statutes and regulations as well as sec. 49.53(1), Stats.

Part A of Title IV of the Social Security Act of 1935, 42 USC, sec. 601 *et seq.*, established the federal AFDC program which provides federal funds to states, on a matching funds basis, to be distributed to aid needy children. The program is administered by the states pursuant to a plan of "cooperative federalism." *King v. Smith*, 392 U.S. 309, 316 (1968). States are not required to participate, but those that choose to do so must submit plans which conform to the detailed requirements of the Social Security Act and its implementing federal regulations. *McCoog By and Through Ferguson v. Hegstrom*, 690 F.2d 1280, 1284 (1982); *Yearby v. Perham*, 415 F. Supp. 1236, 1238 (N.D. Ga. 1976).

One of the federal requirements that states must comply with in order to receive federal AFDC funds is the restriction placed on disclosure of information regarding

AFDC applicants and recipients contained in 42 USC, sec. 602(a)(9). This section provides in pertinent part:

"(a) A state plan for aid and services to needy families with children must . . .

". . .

"(9) provide safeguards which restrict the use or disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part . . . [or other listed federal welfare statutes], (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program. . . ."

Federal regulation which implements sec. 602(a)(9) mirror these restrictions on granting access to information concerning AFDC applicants and recipients. 45 CFR 205.50(a)(1)(i)(A) and (B) (1982), provide:

"(a) *State plan requirements.* A State plan for financial assistance under title IV-A of the Social Security Act, except as provided in paragraph (d) of this section, must provide that:

"(1) Pursuant to State statute which imposes legal sanctions:

"(i) The use or disclosure of information concerning applicants and recipients will be limited to purposes directly connected with:

"(A) The administration of the plan of the State approved under title IV-A . . . [various listed federal welfare statutes]. Such purposes include establishing eligibility, determining amount of assistance, and providing services for applicants and recipients.

"(B) Any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such plans or programs."

Pursuant to the mandate of these federal regulations, the legislature enacted sec. 49.53, Stats. Sec. 49.53(1) provides:

"49.53 **Limitation on giving information.** (1) Except as provided under sub. (2), no person may use or dis-

close information concerning applicants and recipients of general relief under ss. 49.02 and 49.03, aid to families with dependent children, social services, child support and establishment of paternity services under s. 46.25, or supplemental payments under s. 49.177, for any purpose not connected with the administration of the programs. Any person violating this subsection may be fined not less than $25 nor more than $500 or imprisoned in the county jail not less than 10 days nor more than one year or both."

Sec. 49.53(1), Stats., must be interpreted consistent with the federal legislation and regulation from which it emanates. The federal law, as reflected in sec. 49.53(1), provides a shield of confidentiality over information regarding AFDC applicants and recipients. However, this confidentiality is not absolute. Rather, federal as well as state law provides exceptions which allow use and disclosure of such information. We conclude that release of such information to a paternity defendant falls within two of these exceptions.

The first exception that we find applicable is that such information may be released for "purposes directly connected with . . . the administration of" the AFDC program. 42 USC, sec. 602(a)(9); 45 CFR 205.50(a) (1)(i)(A); sec. 49.53(1), Stats. For several reasons we find that a paternity proceeding is directly connected with the administration of the AFDC program. First, the entire federal statutory scheme of the AFDC program is geared to provide aid to children whose parents are absent or otherwise unable to provide for the child's needs. 42 USC, sec. 606(a) defines a "dependent child" in part as a needy child "who has been deprived of parental support or care by reason of the death, continued absence from the home . . . or physical or mental incapacity of a parent. . . ."

Thus it is apparent that a child is eligible for AFDC funds only if the child is deprived of parental support. As stated by the Idaho Supreme Court: "The basic purpose of the ADC program is to provide aid to needy children, except where there is a breadwinner in the home who could be expected to provide such aid himself, the paramount goal of the program being the protection of the needy, dependent child." *Haggard v. Idaho Depart. of Health & Welfare,* 98 Idaho 55, 57, 558 P.2d 84 (1977). If there is a "breadwinner" who is able to provide support for the child, there is no entitlement to AFDC funds. Thus, establishing a paternity defendant as the biological father who can provide care and support for an otherwise "dependent child" is clearly a purpose directly connected with the administration of the AFDC program.

Second, the Wisconsin statutes directly link the commencement of paternity proceedings to AFDC eligibility. Sec. 49.19(4)(h)1a, Stats., provides that as a condition of eligibility for AFDC payments, the mother of the dependent child must "[f]ully cooperate in efforts directed at establishing the paternity of a child born out of wedlock and obtaining support payments or any other payments or property to which [the mother] and the dependent child or children may have rights." Under sec. 49.19(4)(h)1b, the state is automatically assigned any right of support the mother or child may have during the time the aid is paid. Further, sec. 49.19(4)(h)2 provides that if the mother does not comply with the above provisions she shall be ineligible for AFDC assistance.

Thus the statutes implementing the AFDC program in Wisconsin condition eligibility for AFDC funds on the mother's cooperation in establishing paternity. Further, the state has the right to any support the putative father can supply if such funds are given. Thus the disclosure of AFDC information for use in paternity pro-

ceedings falls directly within the purposes outlined in 45 CFR 205.50(a)(i)(A): "establishing eligibility" and "providing services for applicants and recipients." Therefore we agree with the court of appeals that paternity proceedings are "directly connected with . . . the administration of" the AFDC program within the meaning of 42 USC, sec. 602(a)(9), its implementing regulations, as well as sec. 45.53(1), Stats.

The disclosure of AFDC information in paternity proceedings also falls within the exception to confidentiality which provides that such information may be disclosed and used for "purposes directly connected with . . . any investigation, prosecution or criminal or civil proceeding conducted in connection with the administration of" the AFDC program. 42 USC, sec. 602(a)(9); 45 CFR 205.-50(a)(1)(i)(B). The above analysis demonstrates that a paternity proceeding instituted to establish the paternity of a child who has applied for or is receiving AFDC is a civil proceeding directly connected with the administration of the AFDC program. The purpose of the required institution of paternity proceedings is to reduce or eliminate AFDC benefits when there is parental support available to the child.

We therefore conclude that the release of AFDC information in a paternity proceeding instituted to compel support of an otherwise "dependent child" falls within two of the statutory exceptions to the general confidentiality afforded such information under both federal law and sec. 49.53(1), Stats. However, the disclosure and use of such information is not automatic and unlimited. This court is cognizant of the federal mandate placed on states to "safeguard" the confidentiality of AFDC information regarding applicants and recipients. 42 USC, sec. 602(a)(9). Such a duty requires that re-

lease of AFDC information in a paternity proceeding to be limited to those cases in which the AFDC file actually contains evidence necessary for the alleged father's defense. Further, actual disclosure must be limited to only this relevant information and use of the information must be restricted to the paternity proceedings.

Therefore we adopt the following procedure to be used when a paternity defendant requests release of AFDC information regarding the mother who has applied for or is receiving AFDC benefits. First, the defendant must present an affidavit to the trial court stating the grounds for the belief that there is information in the mother's AFDC file which is necessary to present a defense. To meet this first step the defendant must show that he is not simply searching for possible evidence, but in fact has some basis for his belief that the AFDC file contains relevant evidence germane to his preparation and presentation of a defense. If such an initial showing is made, the trial court must then conduct an *in camera* inspection of the AFDC file to determine if the record actually contains relevant evidence that should be available for the defendant's defense. If such evidence is found by the trial court it must, as a matter of procedural due process, be released to the defendant for the sole purpose of presenting his defense. The trial court shall not release the entire file, but shall limit disclosure to only that information which is required for a proper defense. All other information contained in the record shall remain confidential. Further, upon release of such information, the trial court shall direct that the information is to be used solely for purposes of the paternity proceeding. The court shall inform the parties that any other use of the information will subject the violator of the order to the sanctions contained in sec. 49.53(1), Stats. Finally, it should be noted that under sec. 767.53,

Stats. 1981–82,[3] all court proceedings relating to paternity are held in closed court and all records of the proceedings are placed in a closed file. This statute further ensures the confidentiality of the information beyond the parties necessary to the proceedings.

We believe this system of very restricted disclosure allows the state to safeguard the confidentiality of information regarding AFDC applicants and recipients while also protecting the paternity defendant's due process rights to access to evidence that is necessary to prepare and present his defense. The disclosure of AFDC information in this context actually enhances the federal government's interest in providing funds only to children who are genuinely deprived of parental support.

We therefore remand the action to the trial court to hold a hearing as described herein. If, upon proper showing, and following an *in camera* review of the AFDC file, the trial court determines that there is information necessary to Moser's defense, such information shall be released to Moser and a new trial shall be conducted. If the trial court finds either that Moser has not made a proper showing that the file contains relevant evidence or, if following the *in camera* inspection, finds that the file does not contain relevant evidence, then the trial court shall enter a new judgment based on the jury's verdict.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded to the trial court for further proceedings consistent with this opinion.

---

[3] Sec. 767.53, Stats. 1981–82, provides:

"**767.53 Paternity hearings and records; confidentiality.** Any court appearance, hearing or trial relating to paternity determination shall be held in closed court without admittance of any person other than those necessary to the action or proceeding. Any record of the proceedings shall be placed in a closed file, except that access to the record shall be allowed to the parties and their attorneys or their authorized representatives."