(684 P.2d 1025)

No. 56,265

Judith K. Whisler, *Plaintiff*, v. Howard R. Whisler, *Defendant-Appellee*, v. Secretary, Kansas State Department of Social and Rehabilitation Services, Assignee of the Child Support Rights of Plaintiff Herein, *Appellant*.

Opinion filed July 19, 1984.

*James A. Robertson,* and *Jo Alene Kirkel,* of Kansas State Department of Social and Rehabilitation Services, of Kansas City, for the appellant.

No appearance by appellee.

Before Foth, C.J., Parks and Swinehart, JJ.

SWINEHART, J.: This is an appeal from an order of the District Court of Wyandotte County, Kansas, setting aside a garnishment of defendant Howard R. Whisler's wages by the Kansas State Department of Social and Rehabilitation Services (SRS), and directing said department to disclose to the defendant the present address of plaintiff, Judith K. Whisler.

On February 15, 1973, Judith K. Whisler obtained a divorce from Howard R. Whisler in the District Court of Wyandotte County, Kansas. The decree of divorce granted custody of the parties' minor child, Clifford R. Whisler, to plaintiff, and ordered defendant to pay $15 per week as child support, payable through the Clerk of the District Court of Wyandotte County. The decree further ordered the clerk to send all child support payments to SRS as long as the plaintiff received public assistance. No provision was made in the decree for the defendant's visitation of the minor child.

For two years following the divorce, defendant was accused of contempt on several occasions for his failure to pay child support. These accusations were made by SRS since plaintiff was receiving aid to families with dependent children (AFDC), and had assigned her rights to child support to SRS as a condition of eligibility for public assistance.

In 1976, plaintiff closed her AFDC case. On June 22, 1976, SRS notified the Clerk of the District Court of Wyandotte County of the termination of public assistance to plaintiff and advised the clerk that all future child support payments should be sent to plaintiff. There is no indication that defendant was aware of plaintiff's AFDC status at the time.

No record of the events transpiring between 1976 and 1983 has been presented to this court. However, on July 11, 1983, the plaintiff applied for AFDC once again. Pursuant to K.S.A. 1983 Supp. 39-709(c), the plaintiff automatically assigned her child support rights to SRS on that date. On August 16, 1983, SRS filed its notice of assignment with the Clerk of the District Court of Wyandotte County. This notice, in accord with K.S.A. 1983 Supp. 39-754(b)(4), directed child support payments to be paid to SRS.

Upon review of the clerk's records, SRS determined that defendant had not paid any child support for the five years prior to plaintiff's assignment on July 11, 1983. Based on his child support arrearage of approximately $3,900, SRS filed a request

for garnishment of defendant's wages on September 13, 1983. On September 22, 1983, in response to the garnishment, defendant filed a motion to, among other things, void the garnishment and to require SRS to disclose the address of the minor child.

On September 23, 1983, an in-chambers hearing was held on arguments of counsel. Neither the plaintiff nor the defendant was present, and no testimony or evidence was offered other than statements of the two attorneys. As a result of the hearing, the court filed its memorandum opinion voiding the garnishment of September 13, 1983, and directing SRS to disclose plaintiff's address to the defendant. These two orders are the source of this appeal.

Whether an obligor must receive notice of an obligee's assignment of child support rights to SRS before SRS may enforce those rights by garnishment of the obligor's wages is a question of first impression in Kansas.

The trial court found that SRS had offended the obligor's due process rights when it failed to notify the defendant obligor of plaintiff's assignment prior to instituting garnishment procedures. The general rule in Kansas provides that notice to a debtor of an assignment is necessary to charge the debtor with a duty to pay the assignee. See, *e.g., Brown v. East Side National Bank,* 196 Kan. 372, 375, 411 P.2d 605 (1966); *State Investment Co. v. Cimarron Insurance Co.,* 183 Kan. 190, 194, 326 P.2d 299 (1958); *LePorin v. Bank,* 113 Kan. 76, 80-81, 213 Pac. 650 (1923). However, that general rule actually means that a debtor should not be prejudiced by an assignment of which he has no notice, and that until such notice has been given, the debtor may continue to regard the assignor as the owner of the thing assigned. See 3 Williston on Contracts § 433, pp. 206-07 (3rd ed. 1960). " 'The only effect of the failure to notify the debtor of the assignment is to protect him as to any payments which he might make to the assignor or to an attaching creditor of the assignor in good faith and in ignorance of the assignment.' " 3 Williston on Contracts § 434, p. 218.

The defendant in the present case does not claim to have made any payments to the plaintiff or to a creditor of hers, nor can he claim to be in ignorance of plaintiff's assignment to SRS. K.S.A. 1983 Supp. 39-709(c) provides:

"By applying for or receiving aid to families with dependent children such

applicant or recipient shall be deemed to have assigned to the secretary on behalf of the state any accrued, present or future rights to support from any other person such applicant may have in such person's own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid. The assignment of support rights shall automatically become effective upon the date of approval for or receipt of such aid without the requirement that any document be signed by the applicant or recipient. The assignment shall remain in full force and effect so long as such person is an applicant or recipient of such aid or until such other time as the secretary and the applicant or the recipient of such aid may agree."

Additionally, the parties' divorce decree reflected this statutory provision by stating:

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DE-CREED that the defendant is to pay the sum of $15 per week for the support of the minor child of the party [sic], payable through the  . . .   Clerk of District Court of Wyandotte County, Kansas. The Clerk is ordered to forward all payments received to the Wyandotte County Department of Social Services for as long as the plaintiff is receiving public assistance from said agency."

The language of the divorce decree is clear and unambiguous. Defendant had a continuing and unconditional duty to pay $15 per week through the Clerk of the District Court for the support of his minor child. Defendant's duty was discharged only upon timely and sufficient payment to the clerk, regardless of whether plaintiff or SRS was to receive that payment. Even if plaintiff and defendant had agreed that plaintiff would not demand child support and defendant would not exercise visitation, as argued by defendant's attorney, that agreement would not be controlling. Parents cannot legally reduce or terminate the child support obligation by contractual agreement. That right is the child's and can be reduced or terminated only by court order. *Thompson v. Thompson,* 205 Kan. 630, 470 P.2d 787 (1970). Under the facts of this case, defendant was not prejudiced by his lack of actual notice that plaintiff was again receiving AFDC and had assigned her child support rights to SRS.

SRS fully complied with K.S.A. 1983 Supp. 39-754 which requires it to file a notice of the assignment with the court ordering the payments. Neither that statute, nor other rules of civil procedure, require notice to the debtor of an assignment for purposes of collection only. Although defendant had no actual notice of plaintiff's second assignment to SRS, defendant had notice that an order of garnishment had been requested by SRS and properly challenged that order. See K.S.A. 60-717(*b*) (post-

judgment garnishment orders need not be served on defendant); K.S.A. 60-718(c) (defendant may controvert any statement in garnishee's answer); K.S.A. 60-720(c) (defendant may defend the proceedings against the garnishee and may participate in the trial of any issue between plaintiff and garnishee for the protection of his or her interests).

Although the general statutory rule in Kansas is that an assignee is not entitled to the benefits of wage garnishment, an exception to this restriction is specifically made for "assignments of support rights to the secretary of social and rehabilitation services made by applicants for or recipients of aid to families with dependent children under subsection (b) of K.S.A. 39-709 . . . ." K.S.A. 60-2310(d); see 60-2310(e)(1); *Brown v. Tubbs*, 2 Kan. App. 2d 522, 582 P.2d 1165 (1978).

Under the facts presented in this case, the trial court erred in voiding SRS's garnishment and that order is reversed.

Next, SRS contends that the court's order that SRS disclose plaintiff's address to defendant violated federal and state confidentiality statutes and regulations. The court's order was made so that defendant, who had been unable to locate his minor child, could arrange for visitation.

K.S.A. 39-709b(a) sets forth the general rule that information concerning applicants for and recipients of assistance from the secretary of SRS shall be confidential and privileged and shall only be available to the secretary and his or her officers and employees. Three of the specifically enumerated exceptions to this rule are as follows:

"(3) Information may be disclosed to an outside source if such disclosure:

. . . .

"(B) is directly connected to the administration of the secretary's program;

"(C) is directly connected to an investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of the secretary's program;

. . . .

"(F) concerns information contained in the public list, under subsection (c) of this section." K.S.A. 39-709b(a).

## Subsection (c) of K.S.A. 39-709b states:

"The secretary shall maintain a public list which shall contain the names and addresses of all recipients receiving aid to families with dependent children or general assistance benefits pursuant to this act or any act contained in article 7 of chapter 39 of the Kansas Statutes Annotated, and amendments thereto, together

with the payment issued to each during the preceding month, except that the names and addresses of children in foster care who are receiving such benefits shall be excluded from such public list. The secretary shall on or before the twenty-eighth (28th) day of each month prepare and retain in his or her office one copy of the public list. The public list retained in the office of the secretary shall be bound in record books provided for that purpose. All such record books and all reports contained therein shall be and the same are hereby declared to be public records and shall be open to public inspection at all times during the regular office hours. There shall also be on file in each area or subarea office a copy of that portion of the public list which contains the welfare recipients in that area and also on file in the office of each county clerk a copy of that portion of the public list which contains the welfare recipients in that county."

Subsection (d) of that section makes use of the public list for commercial or political purposes unlawful.

Since defendant could have obtained plaintiff's address from this public list, the court's order that SRS disclose plaintiff's address to defendant did not violate the Kansas confidentiality statute.

However, AFDC is a federal program, codified in Part A of Title IV of the Social Security Act of 1935, 42 U.S.C. § 601 *et seq.* (1982). "States are not required to participate in the program, but those who choose to do so must submit plans which conform to the detailed requirements of the Social Security Act and its implementing federal regulations." *State ex rel. Dombrowski v. Moser,* 113 Wis. 2d 296, 299, 334 N.W.2d 878 (1983).

One of the federal requirements that states must comply with in order to receive federal AFDC funds is the restriction on disclosure of information regarding AFDC applicants and recipients contained in 42 U.S.C. § 602(a)(9) (1982). This section provides in pertinent part that a state plan must "provide safeguards which restrict the use or disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part [or under other listed federal welfare statutes], (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program . . . ."

The federal regulation implementing § 602(a)(9) mirrors the above listed restrictions on disclosure of information by providing:

"(a) *State plan requirements.* A State plan for financial assistance under title

IV-A of the Social Security Act, except as provided in paragraph (d) of this section, must provide that:

"(1) Pursuant to State statute which imposes legal sanctions:

"(i) The use or disclosure of information concerning applicants and recipients will be limited to purposes directly connected with:

"(A) The administration of the plan of the State approved under title IV-A [or other listed federal welfare statutes]. Such purposes include establishing eligibility, determining amount of assistance, and providing services for applicants and recipients.

"(B) Any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such plans or programs." 45 C.F.R. § 205.50 (1983).

Section (a)(1)(iv) of that regulation states:

"Publication of lists or names of applicants and recipients will be prohibited. *Exception.* In respect to a State plan for financial assistance under title I, IVA, X, XIV, or XVI (AABD) of the Social Security Act, an exception to this restriction may be made by reason of the enactment or enforcement of State legislation, prescribing any conditions under which public access may be had to records of the disbursement of funds or payments under such titles within the State, if such legislation prohibits the use of any list or names obtained through such access to such records for commercial or political purposes." 45 C.F.R. § 205.50 (a) (1) (iv) (1983).

This section is based upon 42 U.S.C. § 1306a (1982), commonly known as the Jenner Amendment. That amendment provides that a state's eligibility for federal funds under various public welfare programs, including AFDC, will not be jeopardized by implementation of legislation permitting public access to "records of the disbursement" of such funds if information obtained is not used for commercial or political purposes. K.S.A. 39-709b(*c*), which requires that the secretary maintain a public list containing the names and addresses of AFDC recipients and the amount of monthly payment issued to them, is clearly patterned after the Jenner Amendment and its implementing regulation.

However, the few cases construing the Jenner Amendment view it as having no current legitimate purpose to serve and as being "inoperative" due to subsequent amendments of 42 U.S.C. § 602(a)(9). *Michigan Welfare Rights Organization v. Dempsey,* 462 F. Supp. 227, 237, n. 9 (E.D. Mich. 1978). Accord *Rosado v. Wyman,* 397 U.S. 397, 25 L.Ed.2d 442, 90 S.Ct. 1207 (1970); *King v. Smith,* 392 U.S. 309, 20 L.Ed.2d 1118, 88 S.Ct. 2128 (1968); *State ex rel. Dombrowski v. Moser,* 113 Wis. 2d 296. The attorney general of Kansas has apparently agreed that the Jenner Amendment does not provide justification for the "public list" of

AFDC recipients mandated in K.S.A. 39-709b(c). See Att'y Gen. Op. No. 79-130, in which the attorney general declared that K.S.A. 39-709b(c) conflicted with federal statutory and regulatory provisions requiring restrictions as to the disclosure of information concerning AFDC recipients.

Instead of relying upon language of the Jenner Amendment, cases have held that all exceptions from the general rule of nondisclosure are enumerated exclusively in the provisions of § 602(a)(9). See, *e.g., Michigan Welfare Rights Organization,* 462 F. Supp. 227; *State ex rel. Dombrowski,* 113 Wis. 2d 296. We believe this to be the better approach. Accordingly, the State of Kansas may permit disclosure of any information gathered regarding individual applicants for or recipients of AFDC if, and only if, the person requesting the information is directly motivated by and concerned with (1) the administration of the program; (2) an investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of the program; or (3) other listed activities in 42 U.S.C. § 602(a)(9).

Several cases in other jurisdictions which have examined the issue have held that release of AFDC information in a paternity proceeding or in a juvenile proceeding may be for a purpose directly connected with the administration of the AFDC program, and thus fall within an exception from the confidentiality requirement. See, *e.g., County of Nevada v. Kinicki,* 106 Cal. App. 3d 357, 165 Cal. Rptr. 57 (1980); *State ex rel. Haugland v. Smythe,* 25 Wash. 2d 161, 169 P.2d 706 (1946); *State ex rel. Dombrowski,* 113 Wis. 2d 296. One case, however, has held that disclosure of names and addresses of AFDC recipients to "would-be abusers" (*i.e.,* husbands or boyfriends who had physically or emotionally abused the recipients) would not serve any of the permissible purposes enumerated in § 602(a)(9). *Michigan Welfare Rights Organization,* 462 F. Supp. 227.

In the present case the ordered release of AFDC information, *i.e.,* plaintiff's address, was for the sole purpose of enabling defendant to visit his minor child. It is undisputed that defendant was not granted visitation rights in the divorce decree. Defendant has not shown that he ever brought an action to establish or enforce his visitation rights or that he ever exercised such rights without a court order. Kansas statutes clearly contemplate that an order granting or denying visitation rights be

made after a hearing to determine whether visitation would jeopardize the child's best interests. K.S.A. 60-1616. Although closely linked, the right of visitation and the duty to pay child support are not reciprocal in every instance. See K.S.A. 60-1612. Further, defendant has not shown what steps, if any, he has taken to locate his minor child by means other than use of AFDC information.

Under these circumstances, we do not view defendant's request for plaintiff's address as "directly motivated by and concerned with the administration of" the AFDC program or as falling within any other statutory exceptions to the general confidentiality afforded AFDC recipients under federal laws. Accordingly, the judgment of the trial court compelling SRS to disclose plaintiff's address to defendant for visitation purposes is reversed.

Reversed and remanded for further proceedings.