STATE of Wisconsin, Plaintiff-Respondent,

v.

Georgia L. HOLLINGSWORTH, Defendant-Appellant.†

Court of Appeals

*No. 90-0321-CR. Submitted on briefs November 6, 1990.—Decided February 19, 1991.*

(Also reported in 467 N.W.2d 555.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Elizabeth E. Stephens,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *Gregory M. Posner-Weber,* assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.  Georgia L. Hollingsworth appeals from a judgment convicting her of five counts of child neglect, pursuant to sec. 947.15(1)(a), Stats. (1985–86).[1] The counts pertained to five of her sons, who ranged in age from ten months to five years.[2] Hollingsworth raises five issues on appeal:

(1)  The trial court's alleged erroneous rejection of her substitution request and abuse of discretion in rejecting her offer of proof of its timeliness;

(2)  The trial judge's alleged abuse of discretion in failing to recuse himself;

---

[1]Section 947.15(1)(a), Stats. (1985–86), was in effect when the offenses occurred, July 17, 1987. It was repealed as of July 1, 1989, when Chapter 948, Crimes Against Children, became effective. It provided:

**947.15 Contributing to the delinquency of children; neglect; neglect contributing to death. (1)** The following persons are guilty of a Class A misdemeanor, and if death is a consequence are guilty of a Class D felony:

(a)  Any person 18 or older who intentionally encourages or contributes to the delinquency of any child as defined in s. 48.02 (3m) or the neglect of any child. This subsection includes intentionally encouraging or contributing to an act by a child under the age of 12 which would be a delinquent act if committed by a child 12 years of age or older.

[2]Hollingsworth gave birth to another child on July 20, 1987. At least four other children live outside Wisconsin.

(3) The alleged denial of Hollingsworth's right of due process to present a defense by the trial court's rejection of the opinion of a social worker and exclusion of evidence of Hollingsworth's previous contacts with the Milwaukee County Department of Health and Social Services (DHSS);

(4) The trial court's alleged abuse of discretion by admission of evidence of amounts paid to Hollingsworth for Aid to Families with Dependent Children (AFDC); and,

(5) The alleged insufficiency of evidence to convict.

We affirm the judgment.[3]

## THE SUBSTITUTION

On August 20, 1987, the state filed its criminal complaint. Pursuant to court rule, it was assigned to circuit judge Charles B. Schudson. The chief judge of the circuit court subsequently reassigned the case to circuit judge Dominic S. Amato to try the action. Hollingsworth filed a substitution request against Judge Amato on May 20, 1988. Section 971.20(5), Stats., provides:

(5) **Substitution of Trial Judge Subsequently Assigned.** If a new judge is assigned to the trial of an action and the defendant has not exercised the right to substitute an assigned judge, a written request for the substitution of the new judge may be filed with the clerk within 15 days of the clerk's giving actual notice or sending notice of the assignment to the defendant or the defendant's attorney. If the notification occurs within 20 days of the date set

---

[3]Originally assigned as a one-judge case under sec. 752.31(2)(f), Stats., the chief judge of the court of appeals ordered it to be decided by a three-judge panel. Section 809.41(3), Stats.

for trial, the request shall be filed within 48 hours of the clerk's giving actual notice or sending notice of the assignment. If the notification occurs within 48 hours of the trial or if there has been no notification, the defendant may make an oral or written request for substitution prior to the commencement of the proceedings.

The trial court was not aware of Hollingsworth's substitution request until the day of trial, October 19, 1989. It rejected her request because it was filed, not with the clerk of his court, but with the clerk's central office.[4] Hollingsworth counters with sec. 971.20(8), Stats., requiring the clerk to contact the judge immediately so that he/she can determine the propriety of the request.[5] Hollingsworth contends that any fault by the clerk in failing to carry out a statutory duty should not be visited upon her, and therefore argues that Judge Amato lacked authority to act in her case.[6]

---

[4]Rule 313 of the Rules for the First Judicial Administrative District that was in effect at the time the substitution request was filed provided: "Requests for substitution of judge shall be filed with the deputy clerk of the assigned judge." The parties did not argue the applicability of Rule 313 in their briefs.

[5]Section 971.20(8), Stats., provides:

> **(8) Procedures for Clerk.** Upon receiving a request for substitution, the clerk shall immediately contact the judge whose substitution has been requested for a determination of whether the request was made timely and in proper form. If no determination is made within 7 days, the clerk shall refer the matter to the chief judge for the determination and reassignment of the action as necessary. If the request is determined to be proper, the clerk shall request the assignment of another judge under s. 751.03.

[6]Section 971.20(9), Stats., provides:

> **(9) Judge's Authority to Act.** Upon the filing of a request for substitution in proper form and within the proper time, the judge whose substitution has been requested has no authority to act further

■ Waiver applies to the law of judicial substitution. *See, e.g., State ex rel. Eberlein,* 256 Wis. 412, 416, 41 N.W.2d 360, 362 (1950). In *Pure Milk Products Cooperative v. National Farmers Organization,* 64 Wis. 2d 241, 250, 219 N.W.2d 564, 569 (1974), the supreme court stated that the right to substitution may be waived by participation in the trial and by participation in preliminary motions where the judge admits evidence used in deciding ultimate issues.

■ Hollingsworth's participation in the pretrial proceedings after filing her substitution request to the time of trial amply fulfill the criteria for waiver. On August 26, 1988, Judge Amato postponed the trial until October 28 because Hollingsworth's attorney had a scheduling conflict. On October 28, the court issued a bench warrant for Hollingsworth when neither she or her attorney appeared. When Hollingsworth appeared later that day, Judge Amato withdrew the warrant and continued the matter to November 10, 1988, when Hollingsworth again appeared without counsel. When the court continued the matter to November 29, defense counsel appeared, but not Hollingsworth. The court issued a bench warrant. On January 24, 1989, both Hollingsworth and her attorney appeared. Judge Amato withdrew the warrant, rejected a plea bargain, denied Hollingsworth's motion to modify bail, and set the case for trial February 6. On February 3, 1989, upon her plea of not guilty and not guilty by reason of mental illness or defect, Judge Amato granted Hollingsworth's motion for a continuance to June 13 and appointed a psychiatrist to examine her.[7]

in the action except to conduct the initial appearance, accept pleas and set bail.

[7] *See* sec. 971.16(1), Stats. The psychiatrist's report pertained

On May 16, the court *sua sponte* cancelled the June 13 date, and continued the matter for jury trial to October 19, 1989. Only on October 19, 1989, the day of trial, did Hollingsworth's counsel direct the court's attention to Hollingsworth's request for substitution. We deem, as did the trial court, that such participation was entirely inconsistent with her initial position that Judge Amato at all times was powerless to act. We conclude that Hollingsworth waived her right to a substitute judge.

## RECUSAL

Hollingsworth alleges abuse of discretion in the trial judge's denial of her motion for recusal. She asserts that the trial judge became "heated" and induced her motion for recusal when her counsel attempted to make a record on her substitution request.[8] Later, on the admissibility

---

directly to Hollingsworth's plea of not guilty by reason of mental defect. The psychiatrist, William A. Crowley, M.D., filed his examination report April 26, 1989. He found that Hollingsworth had no mental disease or retardation, although she suffered from "deficits" which do not constitute a mental defect. Section 971.15(1), Stats., provides that a person is not responsible for criminal conduct if, as a result of mental disease or defect, he did not appreciate the wrongfulness of his conduct or conform his conduct to law. Given the findings in the report, the issue of mental defect was not tried.

[8] A portion of the interchange between Judge Amato and Hollingsworth's counsel outside the jury's presence reads:

> THE COURT:  If you've got my anguish up, it's yes, but I'm not yelling and screaming at you. If you want to do non-verbal directives on the court, we'll do it through the whole trial. You're not going to try this court, create error, you're going to try the case, defend it. Just because this court won't take willy-nilly plea bargains from your office, you want an easier judge we know that, Mr. Keith. You went to the papers on this and spouted off, you got your client's name in the papers. So we're going to try a case, and we're going to

of a certain document, the court admonished Hollingsworth's counsel to limit his objection to the proffered document only. Hollingsworth argues that a combative relationship between her lawyer and the judge and an atmosphere of hostility permeated the trial. The state counters with the argument that the trial court merely carried out its duty to maintain order in the proceedings, and that nowhere did Judge Amato indicate bias against Hollingsworth personally.

A person's right to be tried by an impartial judge stems from his/her fundamental right to a fair trial guaranteed by the due process clause of the fifth amendment of the United States Constitution. *See State v. Walberg,* 109 Wis. 2d 96, 105, 325 N.W.2d 687, 692 (1982). The statements and actions of Judge Amato are undisputed matters of record. Whether the judge's partiality, if any, violated Hollingsworth's due process rights presents a legal issue which we review *de novo. Id.* at 104–05, 325 N.W.2d at 692.

Hollingsworth argues only that her constitutional rights were violated. She does not argue that the trial

try that case today and we're going to give your client a fair trial, State's going to get a fair trial. Everytime up want to play non-verbal games you better cross your T's, dot all you [sic] I's because I'm going to make a record on you too.

MR. KEITH: Judge, I'd like the record to reflect the court did raise its voice and talk in an abnormally loud voice and was pointing, gesturing at me and would not allow me to make the record, and at this time, with all due respect to the court, — I do hold this court in the highest respect, — I'm — I'm asking the court to recuse itself.

THE COURT: Denied. I'm talking in the microphone. The walls are echoing from the microphone. Because I pointed my glasses at someone doesn't mean diddly. That's silliness. How old are you, counsel? Even the copper's got a smirk on his face. I think that's the most frivolous argument or statement you've ever made on the record.

MR. KEITH: Well, judge, —

judge violated a statutory duty of recusal under sec. 757.19(2), Stats., nor did the state discuss that question in its appellate brief. Therefore, we limit our inquiry to whether Judge Amato demonstrated partiality against Hollingsworth, and if so, whether the partiality violated her right to due process. *See State v. Carviou,* 154 Wis. 2d 641, 646 n.6, 454 N.W.2d 562, 564 n.6 (Ct. App. 1990).

A litigant is denied due process only if the judge, in fact, treats him or her unfairly. *Margoles v. Johns,* 660 F.2d 291, 296 (7th Cir. 1981). A litigant is not deprived of fundamental fairness guaranteed by the constitution either by the appearance of a judge's partiality or by circumstances which might lead one to speculate as to his or her partiality. *Id.*

Hollingsworth complains that several aspects of Judge Amato's behavior during the trial gave the appearance of partiality. True, certain of Judge Amato's rulings on evidence assumed the proportions of pedantic lectures which dressed down Hollingsworth's counsel. The judge on one occasion sustained an unmade objection for the state and also tended to monopolize verbal interchanges at numerous side bar conferences. Hollingsworth's counsel did not provoke the court, and, for the most part, quietly acquiesced in its adverse rulings. However, a strained relationship between the court and counsel is insufficient to require recusal. The judge's bias against counsel must be severe in order to translate into partiality against the litigant. *Walberg,* 109 Wis. 2d at 107, 325 N.W.2d at 693. We are unable to conclude that the judge's statements establish fatal bias toward Hollingsworth. Judge Amato was upset when Hollingsworth's counsel called his attention to the substitution

894

request on the day set for jury trial. Judge Amato's statements related to rulings on evidence and his effort to move the trial along expeditiously. This, in our opinion, is not unfair treatment toward Hollingsworth of constitutional proportions.

## RULINGS ON EVIDENCE

Hollingsworth asserts that her rights to due process and to present a defense, guaranteed by the fifth, sixth, and fourteenth amendments of the United States Constitution were abridged when: (1) the trial court sustained an objection and excluded the opinion of a social worker concerning Hollingsworth's parenting skills and intelligence; (2) it refused to admit evidence of her prior contacts with the DHSS; and, (3) it admitted, over her objection, evidence that Hollingsworth received AFDC payments and food stamps.

In Wisconsin, an evidentiary objection is addressed to the trial court's discretion. *State v. DeSantis,* 151 Wis. 2d 504, 507, 445 N.W.2d 331, 332 (Ct. App. 1989). Discretion entails an understanding of the relevant facts of record and applying pertinent law to reach a reasoned result. *State v. Walker,* 154 Wis. 2d 158, 191, 453 N.W.2d 127, 141 (1990).

Under Rule 907.02, Stats., a person may give an opinion within his or her area of expertise as long as the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Rule 907.02.[9] The

---

[9]Rule 907.02, Stats., provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

rule's unambiguous language does not condition an expert's competence on formal education. *See* the Federal Advisory Committee note to Federal Rule 702 reprinted at 59 Wis. 2d R207-208. "Experience is a proper basis for giving an expert opinion as well as technical and academic training." *State v. Johnson,* 54 Wis. 2d 561, 565, 196 N.W.2d 717, 719 (1972). As has been pointed out elsewhere, Rule 907.02 "permits witnesses with any form of specialized knowledge, *however obtained,* to assist the trier of fact." R.A. Fine, *Fine's Wisconsin Evidence* 209 (1988) (emphasis in original).

> A person may be an "expert" under this rule based on experience alone and need not have any special education or training. The question is whether he or she knows something beyond that which is generally known in the community. If yes, the witness is an expert under this rule.

*Id.* at 210. Here, the witness had been employed as a caseworker by the Milwaukee Department of Social Services since 1975. He related his experience as follows:

> I have worked in the area of foster care, what is called social service study which is evaluation period. I have also worked — I then worked in foster care. I then began working in ongoing protective services. And I — then I worked in an adolescent counseling program at the Department of Social Services. I then moved onto a position in what was called the high risk infancy or child parented program. I then became — stated a special assignment at the State Division of Community Services which was a contract program. I remained an employee of the County, but I was working at the State doing investigations of foster homes and group homes and other

training, or education, may testify thereto in the form of an opinion or otherwise.

facilities that had children placed. And now I'm working in the community services, as I indicated, doing court studies for competency of adults.

He was patently qualified under Rule 907.02, Stats., to give an opinion as to Hollingsworth's intelligence and parenting skills. *See, e.g., State v. Robinson,* 146 Wis. 2d 315, 332–33, 431 N.W.2d 165, 171 (1988).

We conclude that the trial court abused its discretion by excluding the social worker's opinion. Its conclusion that the witness did not qualify as an expert on the subjects of parenting skills and intelligence is not supported by the record. Regardless, the trial court's error was harmless beyond a reasonable doubt. *See State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–232 (1985). The record is replete with evidence that Hollingsworth's intelligence and parenting skills were limited. The social worker's opinion in that regard would have been cumulative at best. *See* Rule 904.03, Stats.

Hollingsworth also sought to establish her lack of intent because her previous DHSS contacts did not result in action or consultation. She claims that based on prior contacts with DHSS that failed to result in prosecution or removal of the children, DHSS led her to believe that her parenting was minimally acceptable and certainly did not fall to the level of criminality. The trial court, however, admitted evidence of contacts for a period of several weeks before the date of the charged crimes, July 17. We conclude that the trial court did not abuse its discretion in its ruling that evidence of contacts before that period were irrelevant because temporally remote.

Over Hollingsworth's objection, the trial court admitted into evidence her receipt of $4,670 in AFDC

payments from January 1, 1987, to July 17, 1987, and $616 worth of food stamps from May 1987 through July 17. On direct examination, she testified that her father, approximately 72 years old, who lived in the household and who received $400 per month social security, offered to help with family expenses.

Again, upon review of an evidentiary ruling, we determine whether the trial court properly exercised its discretion. Hollingsworth mounted no constitutional attack upon this evidence in the trial court, nor does she here. The state raised the nondisclosure provision of sec. 49.53(1m), Stats., and over Hollingsworth's objection, the court ordered disclosure.[10]

■

Hollingsworth argues that sec. 49.53(1m), Stats., proscribed disclosure of AFDC payments to her. The statute provides:

> **(1m)** After December 31, 1986, except as pro-
> vided under sub. (2) or (3) [not relevant to this
> action], no person may use or disclose information
> concerning applicants and recipients of general relief
> under s. 49.02, aid to families with dependent chil-
> dren, social services, child and spousal support and
> establishment of paternity services under s. 46.25, or
> supplemental payments under s. 49.177, for any pur-
> pose not connected with the administration of the
> programs. Any person violating this subsection may
> be fined not less than $25 nor more than $500 or

---

[10]The state moved, *in limine*, the court for an order permit-
ting disclosure of Hollingsworth's records by a DHSS employee.
Hollingsworth requested that the trial court reserve its ruling
until formulation of the substantive jury charge relating to this
evidence. The trial court ordered disclosure during the direct
examination of the DHSS custodian of records.

imprisoned in the county jail not less than 10 days nor more than one year or both.

Hollingsworth correctly contends that the statute was enacted to comply with federal regulations restricting access to this information. *City of Madison v. Appeals Comm. of the Madison Human Servs. Comm'n,* 122 Wis. 2d 488, 492, 361 N.W.2d 734, 736–37 (Ct. App. 1984). She asserts that the trial court's disclosure order did not come within either disclosure exception defined in *State ex rel. Dombrowski v. Moser,* 113 Wis. 2d 296, 300–03, 334 N.W.2d 878, 880–81 (1983): (1) for purposes directly related to administration of the AFDC program; and, (2) for purposes of investigation, prosecution, or civil or criminal proceedings relating to administration of the program. Hollingsworth argues that because the prosecution of a criminal neglect charge is not directly related either to AFDC administration or litigation pertaining to it, she concludes that the trial court erred in applying the law and thereby abused its discretion in admitting the evidence. We determine that the evidence and disclosure order meet both exceptions.

We reject Hollingsworth's argument because any failure to apply AFDC monies in support of the needy children is directly related to the administration of the program. This failure to properly use the funds struck at the very heart and central purpose of the program; i.e., to support children in need. *Id.* at 302, 334 N.W.2d at 881. It turned the program upside-down. If disclosure were permitted in *Dombrowski,*[11] so much more would be the utter frustration of the AFDC program by a failure to

[11]*Dombrowski* involved a request for disclosure to a putative father in a paternity action. Because the father's status could provide a source of support to the child, this purpose was deter-

properly apply the funds. We hold that child neglect as the result of failure to apply AFDC payments to the support of the dependent children is "connected with the administration of the program" as provided by sec. 49.53(1m), Stats. The trial court properly applied the law in requiring disclosure and did not abuse his discretion in admitting payments into evidence.

The trial court's disclosure order is further supported by the prosecution for criminal child neglect and its connection to the program's administration. The AFDC program was established under Part A of Title IV of the Social Security Act of 1935, 42 U.S.C. sec. 601 *et seq. Dombrowski,* 113 Wis. 2d at 299, 334 N.W.2d at 880. When Wisconsin opted into the program it submitted a plan conforming to the act and implementing the federal regulations. *Id.* "Sec. 49.53(1), Stats., must be interpreted consistent with the federal legislation and regulation from which it emanates." *Id.* at 301, 334 N.W.2d at 880. The federal statute, 42 U.S.C. sec. 602(a)(9) requires the state to provide safeguards limiting the use or disclosure of AFDC information to purposes directly connected with "(B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program." Because sec. 49.53(1), Stats. is the Wisconsin statute opting into the federal program, the "criminal proceeding" language of 42 U.S.C. sec. 602(a)(9)(B) is tracked to this statute. The purpose of such language is directly connected with the proper administration of the AFDC program because it deters the misapplication of funds. To secure a conviction the state had to prove that Hollingsworth's neglect arose from causes other than pov-

---

mined to be directly connected with administration of the program. *Id.* at 303, 334 N.W.2d at 881.

erty. Her receipt and misapplication of AFDC funds was probative of that element. We hold that a prosecution for child neglect is directly connected with Wisconsin's AFDC program and the language in 42 U.S.C. sec. 602(a)(9)(B). Under both exceptions defined in *Dombrowski,* the trial court properly granted disclosure and admitted the evidence.

Hollingsworth also objected to the evidence of AFDC payments and food stamps on the basis of relevance. Section 904.01, Stats., defines relevant evidence as that which has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Hungerford,* 84 Wis. 2d 236, 257, 267 N.W.2d 258, 269 (1978).

Section 947.15(1)(a), Stats. (1985–86), proscribes intentional contribution to the neglect of a child. Without hesitation, we conclude that the evidence of AFDC money and food stamps, which Hollingsworth received in the months preceding the filing of the complaint, is relevant. Wisconsin Criminal Jury Instruction 2150 instructs that a child is neglected when a responsible person "for reasons other than poverty" fails to provide specific necessities of life "so as to seriously endanger the physical health of the child." The failure must be "intentional."[12] Evidence of the support money and food

---

[12]The word "intentional" is derived from sec. 939.23(3), Stats., which defines "intentionally" as mental "purpose" to do or cause a result or awareness that the actor's conduct is practically certain to cause that result. The instruction for failure to provide necessities "for reasons other than poverty" is derived from sec. 48.13(10), Stats., which is one of the conditions for jurisdiction under the Children's Code.

stamps paid to Hollingsworth during the time frame of a few months before filing the complaint is directly probative of her non-poverty status and intent.

Without citation to authority, Hollingsworth complains that the prejudicial effect of this evidence far outweighs its probative value. *See* sec. 904.03, Stats. We disagree. The evidence was directly probative of an essential element of the offense. The trial court did not abuse its discretion in admitting it.

## SUFFICIENCY OF EVIDENCE

Relying on the due process clauses of the state and federal constitutions, Hollingsworth argues that the evidence was insufficient to prove that any neglect seriously endangered the health of the children. Without proof beyond a reasonable doubt of each fact necessary to establish commission of the crime, the conviction cannot stand. *State v. Ivy,* 119 Wis. 2d 591, 608, 350 N.W.2d 622, 631 (1984). If the evidence is not sufficient, a defendant is entitled to an acquittal. *Id.* "A jury verdict will be overturned only if the evidence, when viewed most favorably to the state and the conviction, is inherently or patently incredible or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt." *State v. Karow,* 154 Wis. 2d 375, 383, 453 N.W.2d 181, 184 (Ct. App. 1990). On appeal, we consider the evidence presented to the jury and all its reasonable inferences in the light most favorable to the verdict. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

The jury heard evidence that when Hollingsworth moved in May of 1987 with five of her sons and her father to the upstairs flat, consisting of two bedrooms, a living room, kitchen, and bath, it was clean and freshly

902

painted. Two months later, in July, the landlord observed that the flat was in "total disrepair." Feces covered the toilet bowl and was "baked" onto the sides of the bowl. The stench was terrible. Thousands of flies were all over the place. Mattresses stood up against the wall and clothing was piled into a corner. The unscreened windows were shut. The landlord contacted DHSS.

The landlord further testified that the children sat and looked at him. One boy was naked, and appeared "numb." A caseworker noted that they stayed in one room and appeared lethargic. He observed an older boy urinate against a wall near a television set.

A fan without a protective shield operated from about three feet off of the floor. An officer turned it off because of the danger to the children. The refrigerator contained, besides dirty dishes, some frozen meat and margarine. A veteran police photographer, upon entering the premises, was overcome by the stench, retched, ran down the stairs, and regurgitated. Hollingsworth insists that she was not neglectful because the evidence fails to show that the children were beaten, bruised, or sexually abused. They required neither medical or dental care. They had clothing. We reject this argument because the test is endangerment to a child's physical health. To prove guilt it is not necessary to show that loss of physical health has already occurred. *See* Wis J I—Criminal 2150.

The jury was charged to determine whether Hollingsworth failed to provide life's necessities to her sons, thereby seriously endangering their physical health. This court has read the trial transcript. The evidence recited

in this opinion, as well as evidence not detailed here amply establishes Hollingsworth's guilt.

*By the Court.*—Judgment affirmed.