State of Wisconsin, Plaintiff-Respondent,
v.
Sally A. Drew, Defendant-Appellant.
No. 03-2438-CR.
Court of Appeals of Wisconsin.
Opinion Filed: May 5, 2004.
¶1 BROWN, J.
A jury convicted Sally A. Drew of five counts of mistreating farm animals and one count of bail jumping. It acquitted her of twelve other counts. Drew claims the humane officer should not have been allowed to testify as an expert, an earlier conviction in Racine County of mistreating a farm animal should not have been allowed as other acts evidence and her statement to police violated Miranda.[1] We reject each claim and affirm.
¶2 The factual background is largely irrelevant to the issues on appeal. We will therefore recite facts only if needed.

Whether the Humane Officer Was Qualified as an Expert
¶3 Drew argues that the trial court erroneously exercised its discretion by allowing a humane officer for Lakeland Animal Shelter to testify as an expert regarding her opinion that the pig pen was poorly configured and constructed so as to be a safety concern to the pigs, was allowed to opine that the animals "suffered," and was allowed to testify about conditions which would affect the respiratory responses of piglets. Drew asserts that because the officer had no medical or veterinarian training and no training regarding the space standards for farm animals as set forth by statute, she should not have been allowed to state her opinions on these subjects. Drew concedes that experience alone may suffice to make a person an expert and this person need not have any special education or training. See State v. Hollingsworth, 160 Wis. 2d 883, 896, 467 N.W.2d 555 (Ct. App. 1991). However, Drew submits that this experience does not translate into the specialized "etiological comprehension" necessary to opine whether an animal has a respiratory illness, for example.
¶4 We disagree. The officer grew up on a farm and was responsible for caring for pigs, piglets, cows and calves. Her chores included cleaning out the animal pens and feeding the animals. She had been employed in her position for just under five years. She had to take a test to be licensed as a humane officer and had held this license for three years. Part of her training was to go to the University of Wisconsin-Madison farm, where she observed different pig operations and areas where pigs were properly kept. She was responsible for investigating animal welfare checks, including animal neglect and abuse cases for farm animals. She testified that in her role as a humane officer, she went to farms and observed other livestock owners cleaning the pens. In the shelter, she had daily contact with the feeding and caring of animals. She testified, "I deal with animals every day and have for close to 20 years. I've seen animals with upper respiratory; I've seen animals with lower respiratory. I've medicated. So I do believe that I can describe what can happen in the event that animals are not housed in clean areas."
¶5 Under WISCONSIN STAT. § 907.02: "[I]f a witness is qualified as an expert and has special knowledge that is relevant because it will assist the trier of fact to understand the evidence or determine a fact in issue, the expert's analysis or opinion will normally be admitted into evidence." State v. Watson, 227 Wis. 2d 167, 187, 595 N.W.2d 403 (1999). We agree with the trial court that her training, years on the farm, and years on the job qualified her to testify how the configuration of the pig pen endangered the animals. We are further satisfied that her long years of experience on the farm certainly entitle her to relate an opinion as to animal "suffering." In fact, we doubt that this is expert opinion at all. Instead, it is mere translation of her observations which any person in her situation is entitled to give. We are likewise confident that, since she has had experience with respiratory problems in farm animals, she had the "specialized knowledge" necessary to know respiratory problems when she saw them. The trial court did not erroneously exercise its discretion on this issue.

Other Acts Evidence
¶6 Drew next complains about how an earlier Racine county conviction for mistreating a cow found its way to the jury by way of admission of other acts evidence. The Racine conviction arose out of evidence that a cow starved to death. Here, the facts were that a cow was underfed. The State offered the prior conviction as evidence of Drew's intent, her knowledge that improper care in feeding the cow could cause dangerous conditions for the cow, the absence of mistake on her part to timely feed the cow and preparation or plan. The trial court gave a cautionary instruction to the jury that the other acts evidence could be used only as it related to those factors.
¶7 In her brief-in-chief, Drew argued that the only reason for the evidence was to give the jury the impression that if she did it before, she did it again. She argued that intent was not at issue, that knowledge was not at issue because she did not defend on grounds that she lacked knowledge, that there was no defense of mistake and, therefore, the evidence had no basis for being admitted.
¶8 The State responded that the evidence was important to show her state of mind insofar as she was not simply guilty of inadvertent or accidental conduct as she claimed in her testimony. The State also argued that her past knowledge was important for the same reason. Finally, the State asserted that because Drew's defense was based on inadvertence, it was necessary to show an absence of mistake on her part.
¶9 In her reply brief, Drew changed her argument. Here, she conceded that intent, knowledge and absence of mistake "were obstensibly permissible purposes." We read her reply brief to claim that, nonetheless, when the cautionary instruction added the factor of "plan or preparation," it left the impression that Drew planned to treat the animals badly all along and had some sinister, evil intent to do so, which insinuation could well have resulted in the jury considering her to be a "bad person." Drew argued in her reply brief that the probative value of the other acts evidence was therefore outweighed by the highly prejudicial effect that the evidence had on the jury and should have been excluded for that reason. She believed the evidence showed only that she was neglectful, not a person bent on mistreatment.
¶10 This change in direction, witnessed by her new argument, creates two elements worthy of note. First, the new argument abandons the first argument. Second, the new argument was not raised in the trial court. Because of the abandonment and because of the waiver, we will not consider this issue further.

Miranda
¶11 Finally, Drew argues that she was in custody when she gave her statement to the police. The State points out that she came to the police station at the request of the officer, was not threatened with arrest if she did not come, was not handcuffed while at the station, no gun was drawn, no frisk was performed, only one officer interviewed her, and she was not told that she was under arrest or that she was not free to leave. The State further points out that, after making the statement, she did in fact leave.
¶12 Drew has a different take on the events surrounding the statement. In her mind, there were other more important factors tipping the balance in her favor. In particular, she argues that it was important that the interview was conducted in the interview room instead of some more open area of the department. She also claims that she had to report to the police department the same day. She concludes that this demand and this confinement was important to her belief that she was in custody. She also argues that, since she was told the purpose of the interview was to "talk about her care of the animals," this was tantamount to an accusation such that she considered the interview to be in the accusatory stages.
¶13 We reject Drew's argument. Miranda defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). The freedom of action must be curtailed in a "significant way." Berkemer v. McCarty, 468 U.S. 420, 435 (1984). The relevant inquiry is "whether a reasonable person in the suspect's position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances." State v. Mosher, 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998).
¶14 The trial court found that the officer came to the farm in a nonthreatening manner. The trial court further found that when the officer "asked" Drew to come to the station: "There was no order to come down or requirement that she must, just a request that she come. And she did so." The court also determined that she told the officer she would come down when she finished her chores. The trial court further found that she came of her own free will, that going into the interview room or "chamber" was not unusual at all and, therefore, there was no intimidation, no threatening manner.
¶15 Based on these findings of fact, we conclude that a reasonable person in her position would not have considered herself in custody. Her freedom of action was hers and hers alone. Not only was her freedom not curtailed in a significant way," it was not curtailed at all. We reject Drew's Miranda argument.
By the Court.  Judgments affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436 (1966).